IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G. TYNDALL ZOE | : | No. 08-cv-1483 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| IMPACT SYSTEMS, INC., | : | Judge John E. Jones III |
| MARCIA REYNOLDS, and | : | |
| PAMELA S. PRYZIE, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### February 4, 2009

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS

Pending before this Court is a Motion to Dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") filed by Defendants Impact Systems, Inc. ("Impact"), Marcia Reynolds ("Reynolds"), and Pamela S. Pryzie ("Pryzie") (collectively, "the Defendants") on August 14, 2008. (Rec. Doc. 4). For the reasons that follow, the Motion shall be granted.

### PROCEDURAL HISTORY:

Plaintiff G. Tyndall Zoe ("Plaintiff" of "Zoe") initiated the instant action by lodging a Complaint against the Defendants in the Dauphin County Court of

Common Pleas on July 14, 2008. (Rec. Doc. 1-2). The Complaint contained three counts: (I) wrongful discharge; (II) defamation/libel; and (III) deprivations of the property rights secured by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983 (§ 1983). On August 7, 2008, the Defendants removed the action to federal court in the Middle District of Pennsylvania. (Rec. Doc. 1). Defendants filed the instant Motion and a brief in support thereof on August 14, 2008. (Rec. Doc. 4). The Plaintiff responded by filing a brief in opposition on October 21, 2008, (Rec. Doc. 13), which resulted in Defendants filing a reply brief on October 28, 2008, (Rec. Doc. 18). Since the Motion has been fully briefed, it is ripe for disposition.

## STANDARD OF REVIEW:

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to

relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965, 1969 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on

the merits." Id. at 231 (citing Twombly, 127 S. Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234.

## STATEMENT OF MATERIAL FACTS:[1]

Impact provides "community-based alternatives for developmentally disabled persons facing institutional placement; those whose family situations [are] not conducive to continued in-home care; and for those then residing in institutions." (Compl. ¶ 6). At the relevant time, Plaintiff Zoe was employed by Impact as a Community Living Supervisor ("CLS") in the "Central Region," which includes Dauphin, Cumberland, and Perry counties. (Id. ¶ 7, 8, 10). In January 2004, while working as a CLS at Clearfield, a group home in the Central Region, Zoe was attacked by a resident, referred to as "M.M.," while in the middle of a meeting with the Program Director, Joseph Ziegler. (Id. ¶ 10,11). To fend off the attack, Zoe placed his outstretched hands on both of M.M.'s shoulders for approximately 90 seconds. (Id.). Zoe then took M.M. into M.M.'s room,[2] where he spent five minutes with M.M. in an attempt to calm his assailant. (Id.). Zoe then

---

[1] Since the resolution of the instant Motion requires us to accept as true all of the allegations in the Complaint, the following recitation of facts is taken therefrom.

[2] Zoe and M.M. were the only individuals in the room. (Compl. ¶ 12).

returned to the meeting. (Id. ¶ 12). Zoe avers that state regulations require that allegations of residential abuse must be reported by residents within twenty-four (24) hours to the Office of Mental Health/Mental Retardation. (Id.). Zoe maintains that no report of alleged abuse was filed by M.M. within 24 hours. (Id.).

In April of 2006, Zoe was present at a meeting attended by Frances Hadley, Penn State Professor of Dietetics, Joseph Ziegler, Ann Baumgartner, a nurse dispatched by Defendant Reynolds,[3] and Frances Clark, the mother of Shawn Clark, a resident at Clearfield. (Id. ¶ 16).[4] At this meeting, Frances Clark allegedly began to cry and stated, "I have a right to sue for proper care." (Id. ¶ 19). It is averred that Impact was concerned about the effect of a possible lawsuit and that Baumgartner, at the behest of Defendant Reynolds, began advocating for Ms. Clark. In response, Zoe claimed that his "job was to follow the law" and the doctor's orders. (Id. ¶ 20).[5] In response to Zoe's recalcitrance, Ms. Clark requested

---

[3] Defendant Reynolds was the Vice President of Impact at the time in question. (Id. ¶ 16).

[4] Shawn Clark was an 18 year old down-syndrome resident who was a ward of the state. (Id. ¶ 15). The meeting in April 2006 was precipitated by the complaints of Frances Clark in regard to the dietary care being provided to her son. (Id.). At the meeting, Frances Clark was attempting to prevent from being administered to her son any care with which she did not personally agree. (Id.). More specifically, she objected to her son being placed on a Healthy Choice meal diet, a diet which he had been placed on by his treating physician, Dr. Christine Burkhart, in light of being diabetic and overweight. (Id. 17-18).

[5] This was not the first time Ms. Clark attempted to interfere with her son's medical care, nor was it the first time that Zoe had taken such a stance against Ms. Clark. In October 2005, Ms. Clark prevented a sleep study from being conducted on her son. (Id. ¶ 21). In January 2008,

that he be fired. (Id. ¶ 22).

The day after this meeting with Mrs. Clark, Zoe was called into the office of Pamela Pryzie, Zoe's ultimate superior and Impact's Service Director for the Central Region. (Id. ¶ 23). Pryzie informed Zoe that Defendant Reynolds and the Human Resources Department wanted him fired, alleging that his behavior at the meeting was unprofessional. (Id.). Instead, Pryzie told Plaintiff that he would be transferred to Impact's Valley Road facility. (Id.). On May 4, 2006, Zoe was again confronted by Pryzie, this time with allegations, made by a former staff member, that he had abused Shawn Clark in August 2005.[6] (Id. ¶ 25). Pryzie initiated an investigation, despite the fact that abuse allegations must be filed within 24 hours of the incident, and informed Plaintiff that he would be placed on administrative leave during the pendency of the investigation. (Id.). The following day, he was interviewed in connection with the incident by Program Director Kyla Weibly, who stated, "I don't know why Pam told me to do this, but she said to find something . .

---

Ms. Clark refused to provide her consent so that her son could undergo general anesthesia in order for the Temple University Outpatient Dental Clinic to properly treat him. (Id.). When Ms. Clark protested to situations similar to this, Zoe responded to Frances Clark by informing her that it was his duty to follow the law as it applied to mentally disabled residents under the control of the Commonwealth of Pennsylvania. (See id. ¶ 21, 22).

[6] Plaintiff avers that the allegation was made by one of his former subordinates, Charles Miller, who was once chastised by Zoe for expressing a romantic interest in Frances Clark. (Id. ¶ 27).

. . You will hear from us." (Id. ¶ 26). Further, a few of Zoe's co-workers had been interviewed in connection with the allegations and informed Zoe that "they're after you." (Id. ¶ 29).

Ultimately, the investigation revealed that the allegations of abuse against Shawn Clark were unfounded; however, the investigation alleged discovered other incidents of abuse. (Id. ¶ 30). Plaintiff avers that these "other incidents" were nothing more that the incident with M.M. in January 2004. (Id. ¶ 31). Despite the failure of the abuse allegations to be lodged with 24 hours of their occurrence, Impact launched a full investigation into the incident, a full 28 months after it had allegedly occurred. (Id.). In spite of the fact that M.M. had no bruises and could not speak on the issue at the time of the investigation,[7] the investigator concluded that staff members had reported that Zoe grabbed M.M.'s neck and unlawfully retrained him.[8] (Id. ¶ 33). Consequently, Pryzie informed Zoe that he was being terminated and that she was reporting the abuse on the "HICSIS" system, which is the Pennsylvania Mental Health/Mental Retardation catalogue of abuse incidents.[9]

---

[7] M.M. died on June 6, 2005. (Id. ¶ 33).

[8] Zoe claims that after calming M.M. and returning to the meeting in January 2004, none of the individuals present at the meeting made any comment or asked any questions concerning the encounter between Zoe and M.M. (Id. ¶ 14).

[9] Zoe maintains that Pryzie knew that the information disclosed to the HICSIS was inaccurate and untrue but chose to publish it nonetheless. (Id. ¶ 47, 48). He further asserts that

(Id. ¶ 34). A May 22, 2006 letter from Pryzie confirmed the termination of Plaintiff's employment.[10] (Id. ¶ 36).

To this date, Plaintiff avers that has not received compensation for the period he was placed on administrative leave. (Id. ¶ 28). Further, he believes that Pryzie's report remains on the HICSIS registry because he has been unable to find employment in the field of group home living care for the adult mentally disabled.[11] (Id. ¶ 35). Additionally, while his termination letter was dated May 22, 2006, his health insurance benefits were terminated on May 4, 2006, the date he was moved to the Valley Road facility, i.e. before any investigation was conducted. (Id. ¶ 36).

## DISCUSSION:

To quickly reiterate, Plaintiff's claims involve wrongful discharge,

---

Pryzie did this maliciously and with the intent of eliminating the possibility that Zoe would be able to obtain future employment in his chosen field. (Id. ¶ 49). These beliefs support his defamation/libel claim.

[10] Plaintiff asserts that the reasons for his termination were not those contained in Pryzie's May 22, 2006; rather, he asserts that he was terminated because he opposed practices that were not in conformity with Pennsylvania regulations governing treatment of the adult mentally disabled. (Id. ¶ 39).

[11] Plaintiff avers that the residents under the care of Impact are assigned by the Pennsylvania Department of Public Welfare. (Id. ¶ 54). Further, Plaintiff asserts that the HICSIS registry is maintained by the Pennsylvania Department of Public Welfare and that, in placing his name on the registry, Pryzie functioned as a state actor jointly acting with the Commonwealth of Pennsylvania. (Id. 56). He contends that he cannot find employment as a result of Pryzie's disclosure to the HICSIS. (See id. ¶ 57). He believes that this qualifies as a denial of his property rights, constituting a deprivation of his Fourteenth Amendment rights to due process in violation of § 1983.

defamation/libel, and deprivations of his Fourteenth Amendment rights in violation of § 1983.[12] Plaintiff avers that Defendants' conduct was malicious and outrageous and therefore requests that we award punitive damages on all counts. Initially we note that through his brief in opposition, Plaintiff has voluntarily abandoned his § 1983 claim, (Pl.'s Br. Opp. P. 11), and therefore we will grant the instant Motion to that extent. Consequently, the following discussion will focus exclusively on Plaintiff's wrongful discharge and defamation claims.[13]

## A. WRONGFUL DISCHARGE CLAIM AGAINST ALL DEFENDANTS

---

[12] 42 U.S.C. § 1983 states, in pertinent part "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

[13] It is important to note that Plaintiff has come before us on the basis of federal question jurisdiction, i.e. his § 1983 claim. Pursuant to 28 U.S.C. § 1367, federal courts may exercise "supplemental" jurisdiction over state-law claims linked to a claim based on federal law. 28 U.S.C. § 1367 (1990). Although the Plaintiff has voluntarily withdrawn his federal claim, prompting us to grant the instant Motion as to it, the dismissal of that claim does not prevent us from retaining supplemental jurisdiction over the state claims. Arbaugh v. Y&H Corp., 546 U.S. 500, 502 (2006). With regard to these state claims, we note, "Whatever the basis for jurisdiction, the Erie Doctrine applies to any issue or claim that has its source in state law." Fondrk v. Westmoreland County, 2006 WL 1699471 (W.D. Pa. 2006) (citing Three Rivers Motor Co. v. Ford Motor Co., 522 F.2d 885, 888-89 n. 5 (3d Cir. 1975)). The Erie Doctrine directs federal courts to, inter alia, apply the state law of the state in which it sits to substantive issues such as the elements of state claims. See generally Erie v. Tompkins, 304 U.S. 64 (1938). Accordingly, we will rely on Pennsylvania state law in resolving the substantive issues presented by the Plaintiff's wrongful termination and defamation claims.

Plaintiff and Defendants appear to agree on the fact that Plaintiff was an at-will employee of Impact. In general, under Pennsylvania law, an employer may discharge an at-will employee with or without cause unless restrained by contract. See McLaughlin v. Gastrointestinal Specialities, Inc., 750 A.2d 283, 286 (Pa. 2000). The Plaintiff asserts that exceptions to this general rule exist when an employee's discharge violates a clear mandate of public policy or is motivated by a specific intent to harm the employee. (Pl.'s Br. Opp. p. 7 (citing Geary v. United States Steel, 456 Pa. 171 (1974))). However, Defendants are correct in stating that the former is the only exception to the at-will employment doctrine under Pennsylvania law. (Def.'s Reply Br. p. 1 n.1 (citing Rutherfoord v. Presbyterian-University Hosp., 612 A.2d 500, 506 (Pa. Super. Ct. 1992) (holding, "We repeat that the only exception to the at-will doctrine, absent a genuine contract of employment, is a discharge which impinges matters of public policy"))).[14]

There are three embodiments of the public policy exception that can support an at-will employee's claim for wrongful discharge: (I) an employer cannot require an employee to commit a crime; (II) an employer cannot prevent an employee from complying with a law or a specifically delineated statutory duty; and (III) an

---

[14] Accordingly, we decline to address Plaintiff's argument regarding the specific intent to harm exception, since such an exception to the at-will employment doctrine does not exist under Pennsylvania law.

employer cannot discharge an employee when specifically prohibited from doing so by statute. See Cartwright v. SCA Packaging N. Am. LLC, 81 Pa. D.& C. 4th 115, 118 (Pa. Com. Pl. 2007) (citing Spierling v. First Am. Home Health Servs. Inc., 737 A.2d 1250, 1252 (Pa. Super. Ct. 1999)). The Plaintiff does not contend that the Defendants's actions qualify for the first or third public policy exceptions. Therefore, our analysis will be confined to the second exception, which proscribes an employer from preventing an at-will employee from complying with a law or a specifically delineated statutory duty.

When a plaintiff lodges a wrongful discharge claim under this exception, he or she must plead and cite to the law specifically imposing the duty. See Spierling, 737 A.2d at 1252 ("Since Spierling did not plead and has not cited to any legal authority which imposed a statutory duty upon her . . . we can afford her no relief on public policy considerations and are constrained to affirm the trial court order . . . dismissing [the] complaint."). In their brief in support of the instant Motion, the Defendants note that Plaintiff fails to comply with this mandate, as he only invokes general bodies of law such as "Pennsylvania regulations" and the "laws of this Commonwealth." Plaintiff's opposition brief neglects to identify any specific regulation imposing a duty which Defendants were preventing him from discharging. Instead, in his opposition brief, Zoe claims that his employment was

terminated because, in compliance with Pennsylvania law, he, as a non-medical professional, refused to abrogate the orders of a medical professional. Unfortunately for Plaintiff, this statement does not rectify the defect present in the Complaint, as it fails to specifically identify the provision imposing upon non-medical professionals the duty to refrain from abrogating the orders of a medical professional. Therefore, it is our opinion that Zoe has failed to properly plead the public policy exception to the at-will employment doctrine. Consequently, we will grant the instant Motion to this extent.[15]

## B.     DEFAMATION CLAIM AGAINST DEFENDANTS IMPACT AND PRYZIE

The Defendants raise two grounds for dismissing Plaintiff's defamation claim, absolute privilege and the two year statute of limitations. With respect to the

---

[15] Indeed, we believe that Plaintiff's failure to specifically identify a provision imparting upon him the alleged duty would be fatal to the instant Complaint even in the absence of Spierling. As we noted above, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief," and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 127 S. Ct. at 1965 n. 3). Merely asserting that a duty was imparted upon him by "Pennsylvania regulations" or the "laws of this Commonwealth" fails to place Defendants on adequate notice regarding the grounds upon which the duty is based. Therefore, even absent Spierling, Plaintiff's Complaint would be dismissed with regards to the wrongful discharge claim, as that portion of the Complaint falls below the notice pleading standards employed by the federal courts.

former, Defendants assert that an individual has an absolute privilege to publish defamatory statements when he or she is required by law to do so. RESTATEMENT (SECOND) OF TORTS § 592A.[16] Here, Defendants note that they, in operating a community home for mentally disabled individuals licensed by the Department of Public Welfare, are required by law to orally report allegations of abuse of a resident to the county retardation office, the funding agency, and the appropriate regional office of mental retardation. See 55 Pa. Admin. Code § 6400.18. Consequently, Defendants assert that Defendant Pryzie was absolutely privileged in reporting Zoe's alleged abuse of residents to the HICSIS system. Plaintiff counters with the assertion that the improper motives harbored by the Defendants[17] in terminating Plaintiff's employment and reporting the alleged incidents of abuse eviscerate any privilege that would immunize Defendants from suit.[18]

---

[16] Although "the chief present application of the Section is in the case of radio and television broadcasting stations, which are required by the Federal Communications Act to afford to political candidates equal opportunity to be heard, without any power of censorship over the matter broadcast," the provision is not limited to this application alone and "will apply whenever the one who publishes the defamatory matter acts under legal compulsion in so doing." RESTATEMENT (SECOND) OF TORTS § 592A.

[17] Plaintiff maintains that the improper motives can be inferred through Pryzie's alleged directive to Kyla Weibly to "find something" and through co-workers' statements that Impact was "after" Plaintiff.

[18] From this contention, we interpret Plaintiff to mean that Defendant Pryzie was initially cloaked with an absolute privilege but that her improper motives terminated the privilege. With regard to the initially vesting of absolute privilege in Pryzie, we note that while she had an *oral*

In regards to Plaintiff's contention, we note that "one who publishes defamatory matter within the scope of an absolute privilege is immune from liability regardless of occasion or motive. Sciandra v. Lynett, 187 A.2d 586 (Pa. 1963). Thus, in the matter *sub judice*, it is apparent that any improper motive harbored by the Defendants is immaterial with respect to the application of absolute privilege.  However, absolute privilege "may be lost if the publisher exceeds the scope of the privilege by publishing the defamation to unauthorized parties." Miketic v. Baron, 675 A.2d 324, 327 (Pa. Super. Ct. 1996) (quoting Agriss v. Roadway Express, 483 A.2d 456, 463 (Pa. Super. Ct. 1984)).  In this vein, Plaintiff has alleged only that Defendant Pryzie published the defamatory statements to the Pennsylvania Mental Health/Mental Retardation System, something she was required to do by law.  Plaintiff has not claimed that Defendant Pryzie published the allegedly defamatory material to any other entity.  Therefore, we believe that he has failed to aver that such publication exceeded the scope of Pryzie's absolute privilege.  Accordingly, it is our opinion that Pryzie enjoyed the protections of absolute privilege in reporting the alleged incidents of abuse to the

---

duty to report such incidents of alleged abuse, Plaintiff does not aver that she published the defamatory material in any way other than orally. Therefore, it appears to us that Pryzie's conduct does in fact initially qualify for protection under the doctrine of absolute privilege. Consequently, the only issue to resolve is whether Pryzie's allegedly improper motives eliminate her absolute privilege.

14

HICSIS system. We will therefore grant the instant Motion to this extent.[19]

## CONCLUSION:

Based on the foregoing, the Plaintiff cannot maintain any of his claims against any of the named Defendants. For that reason we will grant the instant Motion in its entirety. An appropriate Order will enter.

---

[19] In the spirit of judicial economy, we decline to explore the merits of Defendants' statute of limitations argument.